MUTHER-BALLENGER v. GRIFFIN ELECTRONIC CONSULTANTS, INC.

[100 N.C. App. 505 (1990)]

realities of the school caseload. There is also nothing in the findings which would indicate that the inability of petitioners to meet Rouse's goals adversely affected the agency in any way. To the contrary, these findings indicate that respondent's clients were well served by each petitioner.

The trial court having correctly concluded that the Commission's own findings did not support its conclusion that just cause was established in these cases, the order of the trial court in each case must be and is

Affirmed.

Judges EAGLES and LEWIS concur.

---

MUTHER-BALLENGER, A NORTH CAROLINA GENERAL PARTNERSHIP v. GRIFFIN ELECTRONIC CONSULTANTS, INC.

No. 903SC83

(Filed 30 October 1990)

1. **Sales § 17.1 (NCI3d)— spinal scanner—breach of express warranty—disclaimer**

     The trial court improperly granted summary judgment for defendant on a claim for breach of an express warranty that a scanner would completely perform quality diagnostic scanning of the human spine. Although defendant contended that it effectively disclaimed any express warranties by a disclaimer located in a service agreement, whether defendant made or breached any such express warranty is a question of fact to be decided by the trier of fact. N.C.G.S. § 25-2-313.

     **Am Jur 2d, Sales §§ 723 et seq., 826.**

2. **Sales § 17.2 (NCI3d)— spinal scanner—implied warranties of merchantability and fitness for a particular purpose—disclaimer**

     The trial court erred by granting summary judgment for defendant on a claim for breach of the implied warranties of merchantability and fitness for a particular purpose arising from the sale of a spinal scanner where defendant's disclaimer language appeared only in a service agreement; defendant con-

tends that the service agreement and contract were merged into a single contract; the quotation and service agreement were on separate pieces of paper; each document contains a separate executory section; each document could be read as an entire agreement in itself; and there was a material question of fact as to whether the quotation and the service contract constituted one contract.

**Am Jur 2d, Sales §§ 747 et seq., 826.**

3. **Evidence § 32.3 (NCI3d) — spinal scanner — modification of warranties — parol evidence rule not applicable**

Summary judgment was improperly granted for defendant on the issue of subsequent modification of warranties arising from the sale of a spinal scanner. The parol evidence rule would not bar evidence of oral modifications made subsequently to the written contract and there was a material issue of fact as to whether there was a subsequent modification. N.C.G.S. § 25-2-202.

**Am Jur 2d, Sales §§ 826-832.**

APPEAL by plaintiff from order entered 8 December 1989 by *Judge Herbert O. Phillips, III,* in CRAVEN County Superior Court. Heard in the Court of Appeals 18 September 1990.

*Stubbs, Perdue, Chesnutt, Wheeler & Clemmons, P.A., by Gary H. Clemmons, for plaintiff appellant.*

*Hollowell, Eldridge & Ingersoll, P.A., by James E. Eldridge, for defendant appellee.*

COZORT, Judge.

Plaintiff filed suit seeking damages and recision of a maintenance agreement, alleging that a spinal scanner sold to plaintiff by defendant failed to produce acceptable spinal diagnostic scans. Plaintiff asserted four claims: (1) breach of express warranty; (2) breach of implied warranty of merchantability; (3) breach of implied warranty of fitness for a particular purpose; and (4) breach of contract. The trial court granted summary judgment for defendant on the first three claims. We find material issues of fact are present, and we reverse.

MUTHER-BALLENGER v. GRIFFIN ELECTRONIC CONSULTANTS, INC.

[100 N.C. App. 505 (1990)]

Plaintiff forecast evidence tending to show: After a period of negotiations during the fall of 1987, plaintiff signed a written agreement to purchase a used Pfizer CT Scanner, used to scan the spinal region of the human body. Prior to the signing of the agreements between the parties, Dr. Ellis Muther, a general partner in plaintiff Muther-Ballenger, negotiated with Mr. Jonathan Griffin, president of defendant Griffin Electronic. Dr. Muther informed Mr. Griffin that his partnership needed a scanner which would produce acceptable scans for neurological and psychiatric purposes. Mr. Griffin assured Dr. Muther that the unit would produce acceptable spinal scans for diagnostic purposes. Dr. Muther and B. Rabon Maready, a financial account management consultant associated with plaintiff, traveled to defendant's place of business in Fuquay-Varina to personally inspect a Pfizer Scanner and to inspect a spinal scan that had been produced by the scanner. They were shown a scan on the machine, and it was represented to them that the particular scan was produced from the machine. In fact, the scan had been produced by another Pfizer Scanner located in Elizabeth City. Mr. Griffin made representations to Dr. Muther and Mr. Maready that the Pfizer Scanner plaintiff would purchase would perform at the same quality level and maintain the same operational capacity as a Technicare 2060 Quantum, G.E. 8800, or any machine of comparable style. Based on these representations, plaintiff purchased the Pfizer Scanner from the defendant.

On 17 November 1987, Dr. Muther, acting in his representative capacity for the plaintiff, signed a contract for the purchase of one Pfizer Scanner. This document, entitled "Quotation," was dated 16 November 1987. Dr. Muther also signed a service agreement, dated 17 November 1987. There was also a third document entitled "Addendum to G.E.C. Service Agreement"; this document was dated 16 November 1987, and signed 17 November 1987.

The quotation is typed on defendant's letterhead and describes the specifications for the scanner. The quotation also contains provisions setting forth the selling price and shipping terms. The second, and only other page of the quotation, contains the terms of the maintenance agreement. Underneath the terms of the maintenance agreement is typed "Copy of Griffin Electronic Consultants, Inc. Service Agreement and Terms and Conditions included for your inspection." The signatures of Dr. Muther and Mr. Griffin appear on the second page.

MUTHER-BALLENGER v. GRIFFIN ELECTRONIC CONSULTANTS, INC.

[100 N.C. App. 505 (1990)]

The service agreement is also typed on defendant's letterhead. On the second page appears the following language:

ALL THE TERMS AND CONDITIONS OF THIS AGREEMENT INCLUDING THOSE SET OUT IN THE ATTACHED ADDENDUM AND THOSE SPECIFICALLY INCORPORATED HEREIN BY REFERENCE CONSTITUTE THE ENTIRE AGREEMENT BETWEEN THE PARTIES. THERE ARE NO WARRENTIES, [SIC] EXPRESSED OR IMPLIED, OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR OTHERWISE, EXCEPT AS SET FORTH IN THIS AGREEMENT.

The addendum to the service agreement contains provisions setting forth the services the defendant agrees to provide, the parts not covered by the agreement and the maintenance for which the plaintiff would be responsible.

In an affidavit, Dr. Muther testified that upon installation, the scanner failed to perform diagnostically acceptable spinal scans. The plaintiff was totally unable to utilize the equipment for routine spinal diagnostic purposes. Plaintiff requested that defendant service the scanner as provided in the service agreement. According to the plaintiff, the defendant failed to service the scanner in the manner provided in the service agreement. On several occasions after the quotation and service agreement were signed, Mr. Griffin told Dr. Muther that the scanner would produce spinal scans for diagnostic purposes and that problems with the scanner could be resolved. The scanner, which went on line on 8 February 1988, was removed from the plaintiff's facility in May of 1988 after the plaintiff gave notice of its rejection of the scanner.

In its complaint, plaintiff alleged, among other things, that the defendant breached its express warranty that the scanner would conform to the plaintiff's desired use of the equipment and that the defendant implied warranties of merchantability and fitness for a particular purpose. Defendant answered that it effectively disclaimed all warranties, express and implied, by the disclaimer language (quoted above) located in the service agreement. Defendant moved for summary judgment on plaintiff's claims regarding breach of warranty. Both parties filed affidavits in support of their positions. The trial court found that there were no genuine issues of material fact concerning the liability of the defendant under plaintiff's breach of warranty claims and granted summary judgment in defendant's favor on those claims.

Under N.C. Gen. Stat. § 1A-1, Rule 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." We find questions of material fact present in this case, and we reverse summary judgment.

[1]   The sale of the scanner is a sale of goods and, thus, the sales transaction is governed by the Uniform Commercial Code, N.C. Gen. Stat. §§ 25-2-101 *et seq.* Plaintiff's first claim is that defendant made and breached an express warranty that the scanner would completely perform quality diagnostic scanning of the human spine. The pertinent part of the code is:

> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

> * * * *

> (c) Any sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

N.C. Gen. Stat. § 25-2-313(1)(a) and (c) (1986).

Defendant contends that it effectively disclaimed any express warranties by the disclaimer located in the service agreement. The comment to § 25-2-313 suggests that the basic obligation created by a description of the goods cannot be retracted. "A clause generally disclaiming 'all warranties, express or implied' cannot reduce the seller's obligation with respect to such description . . . ." Comment, N.C. Gen. Stat. § 25-2-313 (1986). Thus, the true issue is whether the defendant made or breached any express warranties. Under the present circumstances whether defendant made or breached any express warranties that the scanner would completely perform quality scanning of the human spine is a question of fact to be decided by the trier of fact. *Davis Realty, Inc. v. Wakelon Agri-Products, Inc.*, 84 N.C. App. 97, 351 S.E.2d 816 (1987); *Pake v. Byrd*, 55 N.C. App. 551, 286 S.E.2d 588 (1982). Thus, the trial court improperly concluded that there were no issues of material fact as to plaintiff's first claim for relief.

[2]   Plaintiff's second and third claims are that the defendant breached the implied warranties of merchantability and fitness for a particular purpose. The Uniform Commercial Code provides that "[u]nless excluded or modified (G.S. 25-2-316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.C. Gen. Stat. § 25-2-314(1) (1986). Further, the code provides that the implied warranty of fitness for a particular purpose arises

> [w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods . . . .

N.C. Gen. Stat. § 25-2-315 (1986). Defendant contends that its disclaimer in the service agreement effectively disclaimed both implied warranties.

To exclude the implied warranty of fitness for a particular purpose, the writing must be conspicuous. To exclude the warranty of merchantability, the language must mention merchantability and be conspicuous. N.C. Gen. Stat. § 25-2-316(2) (1986). Defendant's language of disclaimer in the service agreement meets the code's requirement of conspicuousness. *Billings v. Joseph Harris Co.*, 27 N.C. App. 689, 220 S.E.2d 361 (1975), *aff'd*, 290 N.C. 502, 226 S.E.2d 321 (1976). However, there is no language of disclaimer in the quotation; the only disclaimer appears on the service agreement. Defendant contends that the service agreement and the quotation were merged into a single contract and that the disclaimer in the service agreement is effective to disclaim the warranties implied in the sale of the scanner. The quotation and the service agreement are on separate pieces of paper; each document contains a separate executory section, and each document could be read as an entire agreement in itself. Thus, there is a material question of fact as to whether the quotation and the service contract constitute either one contract for the sale of goods or two contracts, one for the sale of goods and one for the sale of services. Consequently, the trial court's grant of summary judgment for the defendant was improper.

[3]   The plaintiff contends that even if the documents are found to constitute one contract that it is entitled to maintain this breach of warranty action because the defendant's subsequent verbal warranties modified the prior written contract and written disclaimer.

Plaintiff contends that after the sales contract had been signed and after the scanner had been installed, the defendant's agents told plaintiff's agents that the scanner would produce acceptable spinal scans and that any problems with the scanner could be resolved. Thus, plaintiff argues that defendant's statements created additional warranties which were not disclaimed by the statement in the original contract.

In response, defendant argues that the written contract is the complete agreement between the parties and that parol evidence of additional terms may not be introduced. Defendant misapprehends the purpose of the parol evidence rule. The parol evidence rule bars admission of evidence of any *contemporaneous* oral agreements or any *prior* agreements which contradict the terms of the parties' final written agreement. N.C. Gen. Stat. § 25-2-202 (1986). In the present case, the parol evidence rule would not bar plaintiff's evidence of oral modifications made *subsequent* to the written contract.

In *Bone International, Inc. v. Johnson*, 74 N.C. App. 703, 329 S.E.2d 714 (1981), a truck dealer sued defendant for the cost of repairs it made on defendant's trucks. Defendant claimed that after he had purchased the trucks and signed the bills of sale, which contained the words "No Warranty," the plaintiff orally promised to repair the trucks for free. *Id.* at 706, 329 S.E.2d at 716. This Court held that the post sale agreement was an oral modification of the original contract and that the subsequent agreement was not subject to the parol evidence rule. *Id.* This Court held that the "defendant's testimony as to the oral modification thus raises a statutory defense to plaintiff's suit and so creates a genuine issue of material fact, precluding summary judgment." *Id.* at 707, 329 S.E.2d at 717. We find *Bone International* controlling here. There is a genuine issue of material fact as to whether there was a subsequent agreement modifying the original contract. For this reason summary judgment was improper.

In conclusion, we find that summary judgment for the defendant was improperly granted for three reasons. First, there are issues of material fact as to whether the defendant's description of the scanner's capabilities and the defendant's display of a scan taken by another scanner created any express warranties. Second, there is a question of material fact as to whether the quotation and the service agreement are merged into a single contract. Last, there is a factual issue as to whether the defendant's agent's

statements to the plaintiff's agent constitute a subsequent oral agreement. Because these questions must be answered by the fact finder, we reverse the entry of summary judgment and remand the case for further proceedings.

Reversed and remanded.

Judges WELLS and LEWIS concur.